## BROWN *v.* TUTHILL.

A lien, by attachment, or by a judgment, will hold against a prior unrecorded deed.

### ERROR, *to Cedar District Court.*

*Wm. G. Woodward,* for the plaintiff in error. The facts in this suit are : 1. Jennings being owner, conveyed the land to Tomlinson, Aug. 9, 1841. 2. Tuthill attached the land in a suit, v. *Jennings,* Sept. 24, 1841. 3. Tuthill got judgment, May, 1842. 4. Deed from Jennings to Tomlinson, recorded Oct. 11, 1842. 5. Tomlinson conveyed to Brown, Oct. 12, 1842, and recorded same day. 6. Property sold on Tuthill's judgment, Nov. 19, 1842. 7. Deed from sheriff to Tuthill, June 7, 1844, and recorded same day.

The only question is, whether Tomlinson's deed, Aug. 1841, and recorded, October, 1842, or Tuthill's attachment, Sept.

1841, perfected by sale, Nov. 1842, and by deed, June, 1844, has priority. Two elementary principles give direction to the inquiry. 1. No title passes by sheriff's sale until deed is given. *Simonds* v. *Catlin*, 2 Caines, 61. 2. A sheriff's deed must be recorded like others. *Rev. Stat.* p. 203, §§ 6, 30, and 31. This is the doctrine in N. Y. 4 John. 206; 13 *ib.* 471; 8 Wend. 625; 4 Cowen, 602; 9 *ib.* 120. This places sheriffs' sales and deeds upon the same grounds with others. In N. Y. a judgment is a lien. Yet a sale before judgment, and the deed recorded after, the deed holds. 4 John. 216; 9 Cowen, 120. If vendor does not permit a sale to take place under the judgment, before recording his deed, and farther, if there be judgment against A, then A sells, and the deed is recorded before a sale and deed under the judgment, the deed of A holds.

Again, there is a sale and sheriff's deed against A ; then A sells to a *bona fide* purchaser, whose deed is first recorded; the deed from A holds. 13 John. 471. These principles are held in the cases before cited, and in 6 Wend. 213, pp. 224, 227. The case in 4 John. 216, is this case. And these seem to be fair deductions from the doctrine of requiring sheriffs' deeds to be recorded. The case of *Martin* v. *Dryden*, in 1 Gill. 191, depends upon the securing of creditors, in their statute, against an unrecorded deed. We hold that Tomlinson's deed has priority.

*William H. Tuthill*, *pro se.* In this case the matters of fact and evidence relating thereto, being of record, are undisputed ; the issue therefore, is solely upon the law appertaining to, and governing those facts. The only question really presented to the court for decision is, whether the defendant by his proceedings in attachment against Charles M. Jennings, has obtained a legal title to the real estate in controversy as against the plaintiff in error.

It is conceded on both sides that the premises in dispute were rightfully held by Jennings, both claiming under him as the common source of title ; the plaintiff by deed from Jen-

Brown *v.* Tuthill.

nings to Tomlinson, bearing date the 9th August, 1741, and deposited for record the 11th October 1842, and a subsequent deed from Tomlinson to him.

The attachment of the defendant was levied on the property in question, on the 24th of September, 1841, being more than a year prior to the record of the deed, on which the plaintiff's claim is based.

It is not alleged by the plaintiff, that the defendant had notice of Jennings' conveyance to Tomlinson, other than that imparted by the record, as above stated, which is admitted to be subsequent to the levy of the attachment, and by the agreed statement shown to be subsequent even to the judgment itself, which was rendered on the 18th of May, 1842, in the Cedar county district court, (and which, by the way, was a special judgment against the property attached.)

The only material point in the whole case is, whether by an attachment levied, or judgment had, a lien is acquired which will take precedence of a prior unrecorded deed, of which the attaching creditor had no notice at the time of the levy of his attachment. I suppose the correct rule to be this, that the lien on real estate created by an attachment or judgment, is dependent, so far as the time from which it commences on the statute law of the state wherein the judgment was rendered, and that the general principle is, that property seized under attachment is in *custodia legis,* subject to the judgment and the satisfaction of the debt condemned in satisfaction by the judgment; that the rights of the plaintiff, after judgment at least, are the same in every respect as if seized under execution, and the rights acquired relate back by operation of law, and the lien attaches from the date of the levy. This view appears to have been taken by the supreme court of Illinois, in the case of *The People* v. *Cameron,* 2 Gilman, 471, wherein they say, " the chief object of the attachment law, is to place the estate of the debtor under the immediate control of the law, and subject it to the payment of his debts. By the service of the writ the plaintiff acquires a qualified lien on the estate attached for the satisfaction of his particular

debt, which may become perfect, when the debt is merged in the judgment." See 1 Gilman's Reports, 191 to 213, and cases therein cited. 4 Kent's Com., (4th ed.) 435; *Parker's Lessee* v. *Miller,* 9 Ohio Rep. 108; also, 1 Mc Lean, 95; 7 Peters, 464; 13 *ib.* 151; 3 Pickering, 149; 4 *ib.* 253; 13 *ib.* 477; 11 Mass. 475; 15 *ib.* 233; 3 Scammon, 143; 3 *ib.* 305; 1 Dana, 166; 4 Bibb, 78; 5 Law Rep., 393, 505; 7 *ib.* 87; 1 Metcalf, 212; 1 Pickering, 234; 1 *ib.* 389; 1 Blackf. 22.

It would appear that the various cases, seemingly in point, which are considered leading cases on this subject, and in some of which the decisions apparently conflict, have turned upon the peculiar wording of the registry law of the state wherein the decision was made : for instance, in Illinois the statute provides " that all deeds and title papers of whatever description for land, shall be in force and take effect from and after the time of filing the same for record, and not before as to all creditors and subsequent *bona fide* purchasers and mortgagees without notice ; and, as to them, all such deeds and title-papers shall be adjudged void, until the same shall be filed for record in the county where the land may lie. Gale's Stat. 664, § 5, also 152, § 15 ; and the question there arose and was decided as to who should properly be considered creditors within the purview of the law. *Martin* v. *Dryden et al.,* 1 Gilman, 217, 218.

In the state of New York the law differs materially from most of the other states, and the decisions there are opposed to the current of decisions in Massachusetts, Connecticut, Ohio, Kentucky, and Illinois for that reason. By the revised statutes of that state, 1 N. Y. *Rev. Stat.* 756, neither the judgment creditors nor any other creditors, as such, were protected at all, but only *bona fide* purchasers and incumbrancers ; the latter, meaning those who were incumbrancers, technically speaking, by the act of parties, and not by operation of law. It became necessary, therefore, for a creditor in that state, in order to obtain the protection of the statute, not only to obtain judgment, but to purchase under that judgment and procure his

Brown *v.* Tuthill.

deed and have it recorded before the recording of the prior deed, so as to become a *bona fide* purchaser within the meaning of the statute. This done, the statute protected him against a prior unregistered deed, not as a judgment creditor, but as a *bona fide* purchaser. *Jackson* v. *Chamberlain,* 8 Wend. 625, 626.

It will therefore be seen that the decisions on this subject, cited in the New York Reports, cannot have any weight or bearing on the point here at issue, the statutory provisions of the two states on the subject being manifestly different and repugnant.

Our law in relation to the registry of deeds is much more comprehensive and broad in its language than the laws of either of the states heretofore mentioned. It will be observed, by referring to the 29th, 30th and 31st sections of the act, entitled "An act to regulate conveyances," approved January 4, 1840, that "no instrument in writing, that conveys any real estate, shall be valid, except between the parties thereto, and such as have actual notice thereof; until the same shall be deposited with the recorder for record."

If, in our statutes, "all words and phrases shall be construed and understood according to the connection and approved usage of the language," and the registry law of this state is not a nullity, then the conveyance, on which the plaintiff in error predicates his title, could have no effect as against the defendant, until the same was deposited for record.

In a late decision of the supreme court of Illinois, the question arose, whether a lien was created at all by the levying an attachment. And although the statutes of that state do not in express words create such a lien, it was decided that a lien was clearly deducible from the tenor and spirit of the statute. *Martin* v. *Dryden,* 1 Gilman, 191, 210. Now, our law allowing and regulating writs of attachment, *Rev. Stat.* p. 79, § 7, which is a re-enactment of the law, "approved January 17, 1839," declares that "the property attached shall be bound from the time of serving the writ."

13

It is clear, therefore, by the express language of the statute, that a lien is created by the levying an attachment, and perfected by the judgment obtained on it.

Should there, however, be the faintest semblance of a doubt whether a lien was created by the service of the writ of attachment, it will be observed that the judgment itself was rendered before Jennings' deed to Tomlinson was deposited for record, and the provision in our statute relative to judgment liens will cover the whole case.

In the 6th section of the "Act to prevent frauds," as approved January 16, 1840, *Rev. Stat.* p. 271, it is explicitly declared, that "Judgments in the district and supreme courts of this territory shall have the operation of, and shall be liens upon, the real estate of the person or persons against whom such judgments may be rendered, from the day of the rendition thereof in the county within which such judgments may be rendered."

The conclusion is therefore irresistible, that the legal title is in the defendant.

*Opinion by* GREENE, J.  This was an amicable suit, arranged between the parties, to test their respective rights to twenty acres of land in Cedar county.  By arrangement, Brown as plaintiff, filed his declaration in an action of right. It appears without dispute, that Charles M. Jennings had title to the land in question, on the 21st Sept. 1841, at which time William H. Tuthill sued out a writ of attachment against said Jennings, which was served on the 24th of that month. In the proceedings under the attachment Tuthill obtained judgment on the 18th of May, 1842.  Execution was issued and levied on the property, on the 23d Sept. following, and on the 19th Nov. it was sold to the plaintiff, Tuthill; and a sheriff's deed was executed to him, on the 7th of June, 1844, which was filed for record on the next day.  The same land was sold by Jennings to John J. Tomlinson, and a deed executed on the 9th of August, 1841, and filed for record on the

11th of Oct., 1842, and on the next day a deed was placed upon record, conveying the land from Tomlinson to Brown. Upon these facts the court below found the title to be in the defendant, Tuthill, and rendered judgment accordingly.

The only question involved in this case is, will an attachment levy, or a judgment lien, have precedence over a deed previously executed, but subsequently recorded. And this point we have no difficulty in deciding under the statutes of our state.

Brown traces his right to the land in question, by a deed from Jennings, who held the undisputed fee, to Tomlinson, executed Aug. 9, 1841; and then by deed from Tomlinson to himself, dated Oct. 12, 1842, one day after the deed from Jennings to Tomlinson had been filed for record. Under the *Rev. Stat.*, p. 209, § 31, no deed is valid, except between the parties, or between those who have actual notice thereof, until deposited for record. As the present deed was not deposited for record until the 11th of Oct., 1842, it could not affect the levy made by virtue of the attachment, on the 24th of Sept., 1841. From the date of that levy the land was under legal control; and the claim of the creditor operated as a conditional lien upon it, and became absolute when his claim was merged into a judgment. Thus the judgment attached a lien upon all the right not transferred and of record, which the debtor may have had in the land, prior to the attachment levy. With a proper regard to the object and spirit of the attachment, and of the registry laws of our state, we can come to no other conclusion than that a legal attachment lien will hold against a prior unrecorded deed. And there is another reason why the lien, adverse to the deed, must be recognized in this case. It was not only secured by the attachment, and " bound from the time of serving the writ," *Rev. Stat.* p. 79, § 7; but the lien was confirmed and made absolute by the judgment, which was rendered previous to the registry of the deed. The judgment by virtue of the statute, became an absolute lien from the day of its rendition. *Rev. Stat.* p. 271, § 6. As to the effect of a judgment upon real

estate, see *Harrington* v. *Sharp,* decided at the present term of this court. (*a.*)

We should feel more hesitation in deciding this case, if the authorities referred to by plaintiff's counsel were based upon a statute like ours. While such decisions would be applicable to the peculiar registry acts of New York, they would be obviously repugnant to those of our state.

The court below very properly decided, that the right to the land in question was in Wm. H. Tuthill.

Judgment affirmed.